Our next case for argument this morning is Land O'Lakes v. Ratajczak. Mr. Meason, I'm confident that if the people now leaving had read your brief, they would be staying. I wouldn't be so sure, Your Honor. It's very hard to compete with the Chicago Cubs, isn't it? At least this year. Mr. Meason. Good morning. May it please the Court. My name is John Meason. I serve as Associate General Counsel in charge of litigation for Appellant Land O'Lakes. This is an appeal of a summary judgment entered by the Eastern District of Wisconsin dismissing Land O'Lakes' claims under the federal RICO statute and its Wisconsin counterpart, known as the Wisconsin Organized Crime Control Act, or WACA for short. The basic issue presented by this appeal is whether a buyer is injured under either RICO or WACA when it is defrauded into purchasing a specific defined product but is supplied with a cheap alternative adulterated substitute. The district court did not squarely address this issue. Instead, it held that Land O'Lakes had not suffered any compensable injury under either RICO or WACA because it did not lose any profit on the sale of products that incorporated the adulterated ingredient. The district court's analysis is incorrect under both RICO and WACA. With respect to RICO, the case law shows that a buyer suffers a compensable injury if it is defrauded into paying more than the actual value of the good or service at the time of sale. This is precisely what happened in this case. Land O'Lakes paid for true protein in the form of whey protein concentrate, which is also known as WPC. WPC is a defined commodity under both federal law and the Association of American Feed Control Officials, or AFCO. In fact, WPC is such a well-defined commodity that it has its own published market price. WPC is supposed to contain true protein of approximately 30.5 percent. Counsel, I noticed you were describing the claim, Justice, a RICO claim. At least when this suit began, it was a contract claim. Is my understanding correct that the contract claim is now dismissed and gone? That is correct, Your Honor. Not only the contract claim, but there are also fraud claims asserted as well. The contract claims were settled, and the fraud claims were dismissed at summary judgment. We are not appealing the dismissal of the fraud claims. We're only focusing on our claims under the federal RICO statute and the Wisconsin WACA statute. Okay. Thank you. So WPC is supposed to contain approximately 30.5 percent true protein and not more than 3.5 percent non-protein nitrogen. The price that Land O'Lakes paid for the product was based upon the published market price for WPC 34. The product that Land O'Lakes paid for is clearly not the product that it received. Because it was adulterated with urea, the product did not qualify as WPC under either federal law or AFCO. Because it was adulterated with urea, the product only contained about half the amount of required protein. Because it was adulterated with urea, the product caused years of production problems at Land O'Lakes' Browerville facility. Because it was adulterated with urea, Land O'Lakes could not even use the product lawfully to produce its milk replacer products. And finally, because the product was adulterated with urea, the milk replacer products that Land O'Lakes made with the product could not lawfully be distributed to its customers. So Land O'Lakes clearly paid more for the product than it was worth. Has any of the customers sued Land O'Lakes? Not yet, Your Honor. Asked for their money back? No, Your Honor. But again, our position is Land O'Lakes' subsequent sales of the product are irrelevant to the issue under both WACA and RICO. You mentioned subsequent sales. That's another potential way of showing injury. Has Land O'Lakes shown or even contended that its sales have declined as a result of this? No, Your Honor. Again, the measure of injury... We just need to know for sure what the arguments are. In our position, Your Honor, is that under RICO, injury occurs when a buyer is defrauded into paying more than the value of the product or service. That's what happened here. That sounds like a fraud claim, but you tell me the fraud claim is no longer being pursued. Well, RICO is an element of fraud as the court recognized in the Carter v. Berger case. It's simply codified with a lot more elements than common law fraud. But the genesis... The basic claim really sounded to me like a contract claim in which Land O'Lakes is a third-party beneficiary of the contract by which Packer Land originally sold the WAC product. But you tell me that's been settled and he's gone. The sales were made directly from Packer Land to Land O'Lakes. I thought there were some sales direct and some sales indirect. There were through a sales agent. They're still direct. The sales agent didn't buy for its own inventory and resell. It simply was selling for Packer Land to Land O'Lakes. Okay. So, all right. Thank you for correcting that understanding. But it still leaves my thinking that the main event here is a contract claim. And having settled that, well, you can proceed, but you can see my puzzlement. Your Honor, there was both a contract claim under the UCC as well as under a written contract, but there's also a fraud claim. There's no reason why there can't be both a contract claim and a fraud claim in the same case if the factual elements are established for each of those claims. That's the situation in this case. Again, Land O'Lakes was defrauded into paying more than the value of the product. At a minimum, the question of whether Land O'Lakes overpaid is a question of fact that precluded the summary judgment entered by the district court. The Retichek's principled defense to Land O'Lakes RICO and WACA claims is that Land O'Lakes was not harmed because it was able to sell its milk replacer products at a profit. The Retichek's argued that allowing Land O'Lakes to recover under these circumstances would result in a double recovery or windfall. While this argument may have some facial or superficial appeal, it ignores the law. Under both RICO and WACA, Land O'Lakes subsequent sales have nothing to do with whether or not it was injured. Again, under RICO, the issue is whether Land O'Lakes was defrauded into paying more than the value of the product. It was. What Land O'Lakes did with the product after it purchased it from the Retichek's is irrelevant. As this court held in the Carter v. Berger case, an aggrieved party remains an aggrieved party even if it is compensated from third-party sources. The same is true under Wisconsin law. Wisconsin has adopted the collateral source doctrine, and under that doctrine, only payments made by a defendant can be used to reduce the plaintiff's recovery. In fact, evidence of collateral sources, as indicated by the Leitner case cited in our opening brief, are not even admissible. In this case, there was no payment by the Retichek's to Land O'Lakes to address the racketeering scheme. Instead, the only payment that was made was made to a third party, the Packer Land Holding, for a completely unrelated claim. Land O'Lakes was not compensated for its injury. Both the Retichek's and the district court relied upon the Mira case from this court and the Teatsworth case from Wisconsin's state court. Both of these cases are distinguishable. In Mira, this court held that the plaintiff had not been injured by her employer's failure to timely make her health insurance payment because her employer subsequently paid all the past due premiums, and she was not denied coverage or experienced any other harm. Because the alleged wrongdoer in that case, the employer, had cured any loss caused by its accident, there was no injury. Under both federal and state law, payments by a defendant to a plaintiff will reduce the harm caused by the defendant and are credited to the defendant. On the other hand, payments made by customers or other third parties do not get credited to a defendant. Again, as this court held in the Carter case, an aggrieved party does not cease to be an aggrieved party simply because it received compensation from other sources. The only source that counts is the defendant, and in this case, the defendant never made any payments or otherwise compensated Land O'Lakes. In Teatsworth, there was never any loss in the first place. The plaintiff's claim was properly dismissed because the only alleged injury was that he thought his motorcycle might break down in the future because there had been a history of premature engine failure in the models. Unlike the plaintiff in Teatsworth, Land O'Lakes RICO and WACA claims are not based upon an actual injury. The product was defective, inferior, and adulterated at the time it was purchased and received by Land O'Lakes. In response to Land O'Lakes' brief, the retiree checks also rely upon the Mayo case from the Third Circuit. Mayo is just like Teatsworth. They both involve problems or defects that never materialize. The plaintiffs in Mayo claim that they had purchased premium health care coverage but instead were supplied with cut rate health coverage. However, they were unable to show that they had actually been provided with any inferior, inadequate, or delayed health care services. Again, Land O'Lakes claims are not based upon harm that did not materialize or that was simply anticipated. Instead, they're based upon actual harm. The product was defective, inferior, and adulterated at the time it was purchased and received. I see that I'm cutting into my rebuttal time. Unless there are further questions, I'll save the balance of my argument for rebuttal. Certainly, counsel. Mr. Fredrickson. May it please the court. Your Honor, this is a where's the beef case, for lack of a better term. It's a windfall profits case. It's a seriously incorrect metaphor in a case involving whey protein. Understood, Your Honor. I apologize. This is a windfall profits case. Racketeering statutes are expansive in scope, but they are not a vehicle for corporations to increase their normal profit margins. That is exactly what we're seeing here. This was a UCC case, as you pointed out. This was a UCC case that was settled. There was no revocation. There was acceptance. There was testing. There was use, and the product was sold in its normal course of business. There are no allegations in this case that Land O'Lakes suffered any production profit downfall. Land O'Lakes mentions that they suffered some production problems. What Land O'Lakes doesn't mention is that in discovery, they refused to provide any information on the production processes for using the product of WPC, and they said it was virtually impossible to provide that. They also said that because they weren't seeking lost profits, they would not provide any information other than the most cursory on how the product was used and sent off onto their production line. There are two main reasons why this court should affirm the district court. One is that Land O'Lakes suffered no injury using the product as a component ingredient. That's a key part of this case. Also Land O'Lakes did not pass on any injury to any of its customers. As the panel has pointed out, there have been no returns. There were no exchanges. There were no recalls. There were no complaints. There were no field reports of harmed cows. From the standpoint of Land O'Lakes' own customers, it appears to be, and the evidence showed, that there were no problems at all. So why are we here? Has Land O'Lakes been injured at all? Land O'Lakes points to benefit of the bargain as one method of getting damages, but that's not an injury. Even benefit of the bargain cases require some concrete financial injury. But in this case, Land O'Lakes made its own profit. It's conceded that. Unlike litigants in the cases that Land O'Lakes cited in its brief, it is not an end user. It's not stuck with the product. It didn't consume the product. It needed WPC to make an end product. It got the WPC. It made its end product. There were never any complaints from Land O'Lakes that their milk replacers, the end product, was having any problems with performance or with sales. Was the urea passed on to customers through the milk replacer? We have no idea. Because we don't have any of the production information from Land O'Lakes to see whether the urea made it through the production process. There was heating involved. There was cooling involved. Things were volatilized and combined together. There were multiple processes that WPC was put through before it actually left the Land O'Lakes factories. Mr. Fredrickson, if I understood your opposing counsel correctly, he implied there still was a window in which Land O'Lakes could, in fact, be sued by its customers for damages arising from this lapse. Is that true? I don't agree with that. The earliest of Land O'Lakes' claims go back to 2000— The question wasn't that whether you agreed with it. Was it true? I don't believe it's true. No. Your Honor, not that I'm aware of. It didn't come up in this case as an argument. 2006 was the first point where this product was used. There are certain of these purchases that we argued were barred by the statute of limitations in RICO. So there is a whole subset of these purchases that if they could be sued from their end-use customers, they certainly have lost their RICO standing to pursue those under statute of limitations. Again, not in front of this Court on this appeal, but it was argued at the district court. In the production process, we have a black box as to what happened to the urea. So as we look at the pass-on arguments in this case, was any injury passed on? We know that there was no price increase in the pass-on cases that were cited at length in the briefs, all had some component of a price being either absorbed by the defrauded party and passed on to another party. In this case, we don't have that. We also don't have any evidence that any of the urea that Land of Lakes purchased was passed on to customers. So we're in a black box on pass-on, and that's why we have argued that we don't believe this is a pass-on injury case. Your brother relies a great deal on Carter v. Berger to indicate that he just simply doesn't have to show that. In Carter v. Berger, there was an overcharge in taxes, and the plaintiffs paid a higher tax. I'm not sure I understand Your Honor's point with Carter. We used Carter to argue that there was no building of injury that was passed on throughout a supply chain. So in Carter, you had the city being defrauded and absorbing that fraud put upon it by raising property taxes and spreading it out amongst the community. In this case, there's no evidence that Land of Lakes absorbed any injury. They said that they stated and conceded that they made their normal profit using the product, and they didn't raise their prices to their end users. So that's why I think Carter v. Berger and some of the other pass-on cases, actually all of them, are in opposite to this case, in which there is no indication that anything left the factory and anything left in the form of higher prices. Now, as far as windfall profits, Land of Lakes is in a unique position here of asking for some or all of its money back for a component part. And we haven't seen that in the cases, there was no case on point, that I was able to find and my team was able to find on this issue for RICO. And why it's distinct and interesting in this case is that Land of Lakes has given away all its fraud remedies, all its UCC remedies. It just wants RICO damages. But if Land of Lakes gets those damages, it will have done something it could never do in its own business, and that is create milk replacer without paying for WPC. It's a component part to milk replacer. And if Land of Lakes gets some or all of its money back for WPC, it'll be in a far better position than if it had just gone and purchased WPC from another company. And I believe that really highlights the windfall profits nature of this case, and that Land of Lakes is not only being put in a better position than it ever could have been, it's being put in a fantastical position because it was able to sell everything and there is no way to go back and make Land of Lakes buy that WPC from someone else. So it isn't an end user case, this is a, for lack of a better word, a manufacturer case. And I don't want the court to lose sight of the fact that Land of Lakes was a willing purchaser of this WPC. Far from being tricked or defrauded, the Land of Lakes drills down and says, we got urea. We didn't know it had urea. This was a horrible thing. If we would have known this product had urea, we never would have bought it. But they knew it had non-protein nitrogen, urea, ammonia, and some other chemicals are known as non-protein nitrogens. Land of Lakes has its own tests and in their brief they concede that non-protein nitrogen in WPC has a normal level of about 3.5%. They base their own damages arguments on using that as a benchmark and saying everything above that percentage point must be added urea, added something, non-natural. Well in 2009, Land of Lakes suspected that this unnatural level of NPN in the product was ammonia, but they weren't sure. In 2010, they sent an email saying, not sure what Packer Land sent us, but it doesn't qualify as WPC. And they sent that to the distributor that was giving them this product. What did they do in return for that? They kept buying it and buying more of it and using it. And Land of Lakes made a point of citing various feed statutes that Packer Land violated by selling them this product with urea in it. Those feed statutes say that you can't add non-protein nitrogen, urea being one subset of that. Well, Land of Lakes has tests back to 2009 where they knew there was non-natural NPN in their product. They didn't tell their customers. They bought it, sold it, and made a profit on it. So in sum, the racketeering laws were not designed as end-run vehicles around the UCC or contract, and not designed as a vehicle for corporations to pursue windfall profits. If the district court is reversed, Land of Lakes will be put into a better financial position than it ever could have managed absent the alleged fraud, and a possible result under current RICO jurisprudence. Are there any other questions from the bench? Thank you. It doesn't look like it. Thank you very much. Mr. Whitener. Counsel, please be seated. Mr. Whitener. Thank you, Your Honors. May it please the Court. I am here representing the members of the Ratajkic family and the Ratajkic Trust, who were defendants in the case brought by Land of Lakes, appealing the summary judgment entered in favor of four insurance companies on the duty-to-defend issue. And it's important to note at the start of my argument that it relates to the duty-to-defend. The case in chief of Land of Lakes against the Ratajkics was decided on summary judgment. The case was decided by the district court, in contrast, under a duty-to-defend analysis, and that does not involve the assembly or evaluation of an underlying factual record. Only the complaint. And in this context, the district court erred in two ways. First of all, it erroneously concluded that there had not been an occurrence because the district court focused on the allegation of intentional misconduct. And the flaw in that analysis is that under Wisconsin law, the proper analysis of an occurrence involves four different elements, which are intent, volition, knowledge, and foreseeability. And the facts as alleged in this case, although they do primarily allege intentional misconduct, also allege that there were facts that were misrepresented by one or more of the Ratajkic defendants that they either knew or should have known. And that raises the possibility, under Wisconsin's coverage law, of an inference that there were facts that they didn't know, that they were not, in fact, misrepresenting, they just were wrong about it. And under those circumstances, we think that the volitional element and the foreseeability element of the test for occurrence simply isn't satisfied, that those elements to make an occurrence to fall out of the scope of coverage under an insurance policy, all four of those cannot be met. And as a result, there is an occurrence, and the district court's conclusion that there was no occurrence should be reversed. The second aspect of the district court's decision that the Ratajkic's appeal has to do with the existence of property damage. And the property damage alleged and that was primarily argued in the district court was the incorporation of the allegedly defective, because it contained urea, whey protein concentrate 34 into Land O'Lakes' larger milk replacer product. And that argument was resolved by a Wisconsin Supreme Court decision during the pendency of the case. But there are also, in that Wisconsin Supreme Court decision, Nebraska Pharmacal held that the incorporation of the product into another whole complete product was not, in fact, property damage. And so that part of our argument fell out. What remained, however, was the reference in the complaint, and we heard Mr. Meason refer also to production problems that were caused by this, at least allegedly caused by the use of the product that contained the urea in Land O'Lakes' factory. The problem there was that it wasn't really identified. Paragraph 46 of the complaint has a laundry list of issues, including production stalls and problems. We don't know anything more about those. And under Wisconsin law, when a complaint alleges facts that either do not fall within or without clearly of a particular covered condition, then the court is to assume and draw the inference that in favor of coverage under the policy. And so on the facts as interpreted by Wisconsin law correctly seen, there is indeed an occurrence here, and there is also the presence of property damage through the production problems caused in the facility. Thank you. Thank you, Mr. Leitner. Mr. Cohen. May it please the court. I am arguing on behalf of all the intervening insurers. As you heard, this is a pretty straightforward case on the merits. It's also a very straightforward case on the coverage issue. The issue is, as Mr. Leitner pointed out, under Wisconsin law, are Land O'Lakes alleged damages property damage as defined by the policies caused by an occurrence as defined by Wisconsin case law? And the answer is no for three reasons. First, Land O'Lakes does not allege or claim any property damage as that term has been interpreted by Wisconsin courts. Mr. Leitner just admitted as much in his oral argument that there's nothing in the complaint that alleges tangible injury to tangible property, which is required by property damage. Second, the allegations that the retai checks point to as allegations with respect to the occurrence argument are misrepresentation and fraud claims that were dismissed as Mr. as plaintiff's counsel, Land O'Lakes counsel has acknowledged. And therefore, they're no longer involved in this case. And finally, even if, as the retai checks claim, the allegations could be read into other claims that are still in existence in the case, the RICO claim, the WACA claim, the intentional transfer of property claim, the aiding and abetting claim, the punitive volitional conduct, the Wisconsin Supreme Court has squarely held that these types of fraudulent misrepresentation claims are not an occurrence in the Everson case. As Mr. Leitner conceded, Wisconsin Pharmacol resolved the issue of whether the incorporation of the defective urea into Land O'Lakes animal replacer products is not property damage. It's not other property as defined by the Wisconsin Supreme Court. So all that the retai checks are left with are allegations of production problems that they claim are vaguely stated in the complaint. And they argue that it's reasonable to infer from those allegations, which Mr. Leitner indicated don't tell us very much, that there's an inference that there's property damage to Land O'Lakes facility alleged. While there is nowhere in the complaint that there is any physical damage to tangible property alleged in the second amended complaint. The allegations are production stalls and problems, increased tailings, reduced production, etc., etc. These are not property damage to tangible property. None of the items individually or collectively constitute physical injury to tangible property. And the Wisconsin Pharmacol case expressly stated, the Supreme Court held, that for there to be physical injury to tangible property, the product must have been physically altered. There is no allegation whatsoever that any of these production problems physically altered Land O'Lakes facility in any way. And Mr. Meason does not stand before you and argue that either. Mr. Leitner tells you that, gee, because it's not stated expressly in the complaint, you're supposed to lean in favor of the insured and find a duty to defend. Well, that's not the law in Wisconsin. And the Wisconsin Supreme Court just recently, last year in the Waterwell case, said that And the court in that case expressly rejected the very notion that Mr. Leitner just put before you, quote, that insurers must speculate beyond the written words of the complaint and imagine what kinds of claims for damages the plants are actually seeking. That's a direct quote from the case. And the Supreme Court made clear a liberal construction of a complaint does not mean the court should imagine facts not even loosely pled by the plaintiff. But that's precisely what the retai checks have asked you to do, to infer from allegations in the complaint about production problems that there must be some allegation of property damage to the facility. There is no support in the second amended complaint for such allegation. And it's not a reasonable inference. The second issue is the occurrence issue. And the policies define occurrence in part as an accident. And the policies do not define accident, but Wisconsin Supreme Court on a number of occasions, including Doyle v. Engelke, defined an accident to mean an unexpected or undesirable event or an unforeseen incident, which is characterized by a lack of intention. And contrary to what the retai checks have argued before you in their briefs, under Wisconsin law, the focus of the inquiry is on the act that led to the damage, the causal event, as opposed to the injury itself. And the retai checks acknowledge readily that it's undeniable that much of Land O'Lakes complaint alleges intentional conduct. But they point to these two paragraphs, paragraphs 75 and 78, of claims that have been dismissed from the action to support their occurrence argument. And the problem with that is those claims are gone. They were dismissed, and Land O'Lakes did not appeal those claims. But even if you were to, excuse me, and in Bodart, the Wisconsin Supreme Court directly held that an insurer's duty to defend ends after all at least arguably covered claims are settled and dismissed. So even if you assume what Mr. Leitner tells you is true, that there's fraudulent misrepresentation claims alleged by incorporation into the other volitional act claims, Bodart tells us there's no longer a duty to defend. And there was a similar argument raised in Bodart that some of the facts in the dismissed claim arguably provided coverage for supporting the remaining claims. And the Supreme Court flatly rejected that argument, stating, quote, an overlap in allegations does not necessarily establish that the remaining claim is at least covered. The remaining claims are RICO, WOCA, related claims for conspiracy, aiding and abetting, punitive damages, and Wisconsin Uniform Fraudulent Transfer Act. There are no accidents involved in the remaining claims. There is no occurrence in the remaining claims. So regardless how this court decides the appeal of the merits case, there's no duty to defend because there's no remaining even potentially arguable claim that would trigger a duty to defend. But even if you accepted what Mr. Leitner told you about the fraudulent misrepresentation allegations being incorporated in the other claims, the Wisconsin Supreme Court has squarely addressed this in Everson. And in Everson, the court said that a representation is a volitional act. It's something that's volitionally made. It's not an occurrence. And as this court recognized in the Ebert's case, Everson forecloses this argument. The act of making a representation is a volitional act that is not an occurrence. And in Everson, that case involved both a negligent misrepresentation claim and a strict responsibility misrepresentation claim. And the court said under either theory of liability to succeed, the plaintiff must make a false or misleading statement about something which is a volitional act. And as the district court pointed out, even if you disregard Everson, these allegations can't be read in a vacuum because the very next allegation, paragraph 76 and paragraph 87 expressly allege that the Reticics made the representations with the intent to deceive and to defraud Land O'Lakes and to induce Land O'Lakes to act upon those representations by purchasing and continuing to purchase the whey protein product from Packer. Those are not accidents. Those are not occurrence. Those are volitional acts. Now, the Reticics make much of the fact that in Wisconsin law, it's not dependent on the theory of liability. But what was important to Everson was the claim because under Wisconsin law, an insurer is under an obligation to defend only if it could be bound to indemnify the insured, assuming that the insured person proved the allegations of the complaint. So the theory is important because it's a claim that has to succeed for there to be coverage in the first instance. Now, the Reticics have raised a couple arguments with respect to whether or not Everson is still good law. Ebert's, in this case, the Seventh Circuit in Ebert's resolved that issue. It is still good law. And the court expressly said that although the justices disagreed about how to interpret Everson, there's nothing in Stewart 2 to suggest that the holding of Everson is no longer good law. And the Seventh Circuit applied Everson in Ebert's holding that it's fully applicable. And the Reticics claim that Gundram has changed Everson. Gundram wasn't a negligent misrepresentation or a false representation case. It was a case involving a fight at a drinking party. And it relied on Everson. It didn't reject it. And Mr. Leitner tells you there's now a four-element test for occurrence in Wisconsin. You can't find that anywhere in the Gundram decision. The court did not declare a four-element test. What it did was rely on Everson and found no occurrence. For those reasons, the district court should be affirmed. Thank you. Mr. Mason, your turn now. I apologize for jumping the gun earlier, Judge Easterbrook. I want to address several points made by Mr. Fredrickson. First of all, with respect to the windfall issue, as an initial matter, Land O'Lakes did incur lost profits. It had years of production problems caused by the product. The problem is Land O'Lakes could not prove those lost profits. But lost profits are not the only remedy under RICO and WACA. Instead, a plaintiff is injured under RICO if it pays more than the value of the product, and a plaintiff is injured under WACA if it's deprived of the benefit of its bargain. With respect to the windfall situation, only payments made by a defendant can be credited to the defendant. Payments made by third sources, collateral sources, are not credited to the defendant. This may, in some cases, result in a double recovery or a windfall. But the policy of the law is that if there is going to be a windfall, it is better for the windfall to fall upon the victim than the wrongdoer. Opposing counsel makes much of this UCC settlement. What's your response? It sounds to me like that's the economic loss doctrine argument, Your Honor. And in Wisconsin, the economic loss doctrine does not apply to statutory claims. It only applies to common law fraud claims. And what's being asserted here are statutory claims under both RICO and WACA. They are immune from the economic loss doctrine. There's no question that Land O'Lakes was deprived of the benefit of its bargain. The Nehemi case out of the 10th Circuit confirms that benefit of the bargain damages are recoverable in a WACA-type statute. It is a form of injury. Deprivation of the benefit of a bargain is an injury. That's precisely what happened in this case. Land O'Lakes bargained to receive one product and received an inferior adulterated substitute instead. There's also no doubt that the product was passed on. Land O'Lakes used the WPC to make fat base. Land O'Lakes sold that fat base as is to some customers and incorporated it into milk replacer products for others. Land O'Lakes overpaid for the product and Land O'Lakes customers in turn overpaid for the products that they received from Land O'Lakes because they contained the adulterated product. My last point is that Mr. Fredrickson said that there may be some issue as to whether the higher NPN was due to NPN or was due to urea. There's no question about that. In fact, Daniel Rytajczyk admitted during his deposition  In conclusion, Land O'Lakes was injured in this case. It paid more for the product than it was worth. There was an overpayment. Land O'Lakes was also issued because it was deprived of the benefit of its bargain. At a minimum, the question of whether Land O'Lakes was injured under either of these two theories is a question of fact that precluded summary judgment. Accordingly, Land O'Lakes respectfully requests that the district court's be reversed and that this case be remanded for trial. Thank you very much. This case is taken under advisement.